The first case is Target Corporation v. Proxicom Wireless, 2022-1282. Mr. Davis. Good morning, your honors. May it please the court. Target raises two issues with respect to its appeal. First, with respect to the 359 patent, the board erred in interpreting claims 37 and 43 to require interaction with a claimed list of goods when no such requirement of interaction is recited in the claims. And second, with respect to the 592 patent, particularly claims 25, 26, 28, and 29, the board erred in applying the wrong legal standard in holding that the prior art disclosures at some times, but not always, made the claims are insufficient for purposes of invalidity. Turning first to the issue of the 359 patent. Claims 37 and 43 recite delivering a list of goods or a list of goods available for selection as part of a step in an e-commerce transaction. As the board already found with respect to Claim 1, that aspect of a step in an e-commerce transaction was already met by Pertia's disclosure of providing an electronic coupon or an e-coupon. With respect to Claims 37 and 43, the board further found, and this is at Appendix 39, quote, that Pertia discloses sending a restaurant menu as part of electronic coupon information, thus establishing that the board does not dispute that the menu is a list of goods available for selection. So your view is that 37 and 43 are inconsistent with the decision on Claim 1? Your Honor, I believe that the board's determination was that interaction was required with that list of goods, and that's just simply not recited in the claims. What's their basis for requiring interaction in claim language? Your Honor, I'm not certain. It might have been— Well, what did they say in their opinion about that? Your Honor, they said that interaction is required particularly. They said, Petitioner and his declarant fail to identify any discussion or suggestion in Pertia of the user interacting with the menu after it has been delivered. The board doesn't provide a basis for that interaction requirement. As has been the case in several other proceedings before this Court, where the facts that would support these claim limitations being met are largely undisputed. They're already found by the board, and the error below here was one in improperly reading in a limitation into the claims. The proper remedy here is to reverse as to Claims 37 and 43 and find those claims unpatentable. Proxicom's arguments in response really fall into two buckets, one of which were waived. Proxicom didn't raise arguments in particular regarding these claims. They instead had arguments regarding the independent Claim 1 that were rejected by the board. And two, Proxicom raises arguments on appeal now with respect to Claim 1, and those arguments are already flatly stopped. There is a co-pending proceeding, the 932 IPR, also involving Claim 1, which Claims 37 and 40 depend, and Proxicom made a choice not to appeal those determinations. If there aren't any further questions on 359, then I'll turn to the 592. Claim 25, which is the independent claim at issue in the 592, recites determining that the server must determine a name of an entity or object located in proximity to the second wireless device. Now, the board acknowledged Petitioner's argument that Portilla, the prior art reference at issue there, expressly discloses a merchant media arrangement, so that's the thing that has the billboard that distributes e-coupons electronically, and it also discloses an in-store embodiment, where you put that merchant media arrangement in the store itself, advertisements are in the store along with the Bluetooth beacons, such that the recipient of that e-coupon can then redeem that e-coupon for a product in the store. The board's rationale for finding that that limitation of the 592 Claim 25 is not met, this is at Appendix 72, is while it may be likely that the advertised products are in the store, this is not necessarily the case. For example, the products may be out of stock. But it is black-letter law, as this court found in Hewlett-Packard, that a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention. And this court's findings in Unwired Planet are particularly on point here. There, the patent challenger had showed that a limitation would often be met, and this court found that that was sufficient. That particular limitation there required an ordering of geographic locations from farthest away to nearest. The prior art disclosed an alphabetical ordering of those geographical locations. Bless you. Thanks. And it was found that is sufficient, even though the alphabetical ordering, of course, wouldn't always meet the geographical ordering of farthest to nearest. It would sometimes meet it, or it would often meet it, and that was found to be sufficient. How do we know from Pertilla that it's going to identify any entity or object that's located in the store? Pertilla, at paragraph 39. Okay. Sorry. Can you cite the other appendix? Yeah, it's appendix 1426. I guess my question is, and we can look at this, is would it, if all Pertilla does is send a coupon for items that the store might carry, but it has no idea whether they're there or not, why would that satisfy this limitation? So it satisfies the limitation when those products are in the store, and that's the whole purpose of what paragraph 39 is describing. When you have these advertisements in the store, you would have Bluetooth beacons around the store. It's for advertising those products and redeeming those products. I can read from paragraph 39. I think you have it, Your Honor. Pertilla teaches, certain example types of electronic coupons, e.g., product offering with price discounts, may require validation and or redemption. For such electronic coupons, the user's terminal visits a second location, such as the Merchant Purchase Center, where a redemption data processing station, 54, validates such coupons. So you get a coupon, just as we normally do, for a product with a discount, and the point is that you go and you redeem that coupon to get that product. Pertilla then goes on to explain that that second location, because up to this point, they're in two separate locations, the location of the merchant media arrangement and the location of the store. So Pertilla then goes on to explain that those may be the exact same location, and you would put tags or beacons located in the store itself, such that you can get the coupon there and redeem it. So is that really a legal error, or just the Board has so misread this reference that there's no substantial evidence for its conclusion that Pertilla doesn't disclose this? I think both would apply, Your Honor. It's directly contrary to this Court's findings in Hewlett-Packard, as well as in Unwired Planet, but their finding also is directly contrary to what Pertilla expressly teaches with respect to the in-the-store embodiment. There's nothing else, right, that the Board relied on to find that Pertilla didn't disclose this? This is the same paragraph. We just have to look at it. Yes, Your Honor. Okay. Proxacom's arguments with respect to these issues, as well, either fall into the bucket of being flatly estopped, they're again raising issues that were already decided with finality in the 932 IPR, or they're raising an argument that the target's mapping somehow changed when the Board recognized throughout that target's mapping that it was relying on was consistently the same threat. Do we know that the entity or object located in proximity has to be something that can be purchased, or can it be something else? Because, I mean, Pertilla specifically discloses a tag or something that's located there. Why isn't the tag itself? I don't know what a tag is, but I assume it's like, you know, here's this item for sale. Why isn't that the name of an entity or object? So the tag is like an RFID tag. Sometimes we have a badge. That's just a locator. When that phone gets close enough to the RFID tag, but Pertilla is expressly describing in paragraph 39, as we read, that there's a product offering for price discounts. So in the same way we typically think of a coupon, you get $0.50 off or whatever for a particular product, the product is separate from the Bluetooth beacon or the RFID tag that is the initial interaction. Why did the Board talk about inherency with regard to this? Your Honor, I don't think we relied on inherency, but the Board found, I think that was the source of the Board's confusion was reconciling. Inherency is often the source of the Board's confusion. Was it argued by either side as an inherency analysis? It was not argued by the petitioner. I don't remember an argument from the patent owner that it was inherent. But even under what the Court cites there, it cites Robertson, and Robertson says, the mere fact that a certain thing may result from a given set of circumstances is not sufficient. It necessarily results from, if the product's in the store, it necessarily results in the claim limitation being met. Unless there's any further questions, I'll reserve the remaining time for rebuttal, Your Honors. We will save it for you. Mr. Hand. Can you start with the second set of claims about the 23 series? Yes, Your Honor. If it may please the Court, while it's Crossy Combs' position that the petitions failed to meet the statutory burden as to any of the claims, even if the Court disagrees with our cross appeal, it is clear that the claims that Target is appealing failed because Target never set forth grounds and explained those grounds in the petitions. And I think, to Your Honor's point, turning to claims of, sorry, you asked for claims of the 590 patent. Let's just look at 25. It's the main independent claim in that group, right? Right. And so I think what's most notable here, Your Honor, is the Board made a finding that Target failed to meet its burden. It did not show how these claim limitations were met. They did not abuse their discretion in making that finding. And turning to- Why is it an abusive discussion standard? Isn't it a substantial evidence standard? Because, well, I think there's- No, no, no, sorry. I shouldn't have asked you that. I don't want to get hung up on that. Can you point me in the record what their petition says about claim 25? Yes, Your Honor. So their- Because we just looked at a passage in Bertilla that seems particularly relevant, and the argument from your friend seems somewhat persuasive. Well, so- Did they not make that argument in the petition? They did not. And so if you turn, for example, to Appendix 2449, which is their petition, so when Target addressed Claim 25, they did not address at all any of the additional limitations that were added by that claim. They are largely citing back up to the independent claim. They do not- So Claim 25 adds that the server needs to determine a name. There is no explanation of how Bertilla meets that limitation at all. They have their citations to some evidence, but there is no discussion in the petition at all. Target completely failed to do that. Well, it cites back up to- Can you- I mean, these petitions are often, because they have such- You all have limited page stuff. Sometimes they have them economized. Is this- They're citing to C19A. Is that what- So where is that? That's right. And so Claim 19 does not at all discuss or does not require that the server determine a name. But do we have their argument on 19A in the appendix? Is their argument on 19A in the appendix? It would be, Your Honor, earlier. I don't have the appendix cited there. Well, do you have your appendix? I do, Your Honor. So their 19A is found on appendix 2428. And in that discussion, they do not address the server determining a name. Now, Mr. Davis, in presenting the store-within-a-store argument, where you take the merchant media arrangement and you put it in the store, which is paragraph 29 of the Bertilla reference, Mr. Davis said, well, to Your Honor's question, there's beacons throughout the store. That's a mistake. Bertilla never says that. That's what Target does. Target has beacons throughout its store. But the Bertilla reference never goes into that sort of detail to suggest that if you put the merchant media arrangement or that there are multiple locations or that these are next to a product that's receiving a coupon that might name 30 cents off of Crest Toothpaste, that that means that the server is determining the name of an entity or object located in proximity to that billboard. This is Joe Toronto. I'm confused about something. I thought the claim element we're talking about is what's called 25B. Is that right? Yes. 2449 of the petition. And so we shouldn't be looking at 19A. We should be looking at 19B and C, shouldn't we? Isn't that what 2450 cites? Yes, Your Honor. So element 25B cross-cites to 19B and C. And 25C cites strictly to 19C. I mean, look at 2430 in the bottom. Doesn't it say exactly what we're arguing about, that Bertilla discloses a remote source server to associate the promotional information on the promotional article with an e-coupon linked to this particular location? So it identifies that the ID is tied to a coupon. Yes. But that does not indicate that the server is determining the name of an object or entity located – the name of the object or entity. It's giving a coupon. It's returning a coupon. But there's no indication in Bertilla that the server is performing the additional limitation required in 25 of determining the name of an object or entity that's located in proximity to that tag or that billboard. What does it mean to associate the promotional information on the merchant promotional article – although that's in brackets, so I don't know what that means – with an e-coupon linked to this particular location? Isn't a merchant promotional article something that they're selling? No, it's linking what's displayed on the billboard to a coupon. The server is not making any further determination as to whether to report back the coupon itself. Your Honor, this is further highlighted. The same lack of evidence is found and is even more glaring with respect to Claims 37 and 43 where, again, of the 359 patent, where those dependent claims add limitations and there is zero discussion in the petitions. And so the Board's finding was not that it's met some of the time or it could be met in some cases. It's that the petition did not set forth any explanation or put forth evidence from which a finding of invalidity could stand. Do you agree that there's nothing in the claims – now I'm going to the other ones, the 41 – that there's nothing in the claims that suggests there has to be an interaction? I disagree with that. What in the claim language suggests that there has to be an interaction? I think that the suggestion that it is taking place within the context of an ongoing e-commerce transaction requires more than just a static delivery of one item. And where we see that distinction drawn, Your Honor, is when Target set forth its explanation in Claim 1, how a coupon satisfies the limitation. Target also cited to the redemption process. So it's cited to steps in an ongoing e-commerce transaction. With the suggestion that you could deliver a menu, there's no indication that that's a list of goods or services. There's nothing in Pertillo that explains how that would happen in an ongoing transaction. Wait, that sounds like a different argument. If we assume that a menu is a list of goods or services, then does that make the Board's determination wrong? It does not. It seems like the Board determined that the reason it fails is because there's nothing that requires the user to interact with that list of goods or services. Well, the Board said, and this is Appendix 39, the Board determination rests on the fact that the petitioner did not explain how sending a restaurant menu constituted a list of goods or services, one, or as a step in an electronic commerce transaction. So there were two grounds that the Board said the petition failed to establish. So there was nothing in that petition. I mean, how is a restaurant menu not a list of goods? Because delivering a static item does not meet the limitation of doing something in an ongoing electronic commerce transaction. And more to the point, at no point below, not in the petition, not in the reply, not in oral argument, at no point did Target ever address how a menu constituted a list of goods or services, much less how it did so within the context of an electronic commerce transaction. It is making those arguments for the first time on appeal, which is totally improper under redline detection. Target never made the arguments below. The Board correctly determined that Target wholly failed to address those limitations in the petition and correctly found that the claims were not invalid. Let me ask you this. If we disagree with you on Claim 25 and determine that Pertilla shows that it does identify the name of an object or an entity, does that mean that the Board's holdings on 26, 28, and 29 are also incorrect? Or is there something else distinguishing on those? The arguments were related to the… Okay. And I'd like to address Your Honor's question to Mr. Davis about the inherency argument. And I think the way this comes… Did you argue inherency? We did not. And I think what happened here is the Board went out of its way to give the petitions more credit than they were worth. The Board went through a process of trying to map Pertilla to the claims, not restricting itself to what the petition did. And what the Board actually said was, at best, there is perhaps an inherency argument advanced by the petitioner. They didn't directly do it, but the Board said, at best, your store-within-a-store arrangement could be an inherency argument. And if that is the case, it fails because it's only sometimes met. It's met by happenstance. And so, therefore, if it had been presented, it wouldn't be met. I see I'm into my rebuttal time. I would like to reserve if it pleases the Court. You may reserve it and use it if there's something to rebut. Thank you, Your Honor. Mr. Davis. Thank you, Your Honor. I would like to address the points that were raised, starting first with the 592 patent. As Your Honor, Judge Toronto properly noted, this was the limitation that was at issue, which was 25B as opposed to 25A. And what is noteworthy there in the petition itself, this is at Appendix 2450, where the petitioner directly argued, as discussed in 19B and 19C, the Merchant Media ID used to determine information, including the name of the product being promoted, as well as its manufacturer. The name limitation is directly argued there. There's no confusion by the Board that that's what petitioner's argument. This is in the institution decision at Appendix. And that refers back to the 19B and 19C around 2429 to 2433, which does say something about names. Yes, Your Honor. Can you address the other patent for a minute? What is it in – and this question, I think, picks up on something Mr. Hand said. I think Mr. Hand said something like, in your discussion, in your petition of Claim 1, you, for an element, for the Claim 1 counterpart element, which uses actually the term an ongoing electronic commerce transaction, which 37 and 43 don't use that term, but that you referred to, and I'm summarizing perhaps inaccurately, the delivery of the coupon and then some continuing port, an additional step in an electronic transaction, so that the delivery of the coupon with a list of offerings is not itself enough to be the electronic transaction. Yes, Your Honor. And completing your initial thought, that other reference to the name discussion was at Appendix 2433. And with respect to your question as to the 359 patent, that is what the Board found was sufficient to meet the requirements of an ongoing e-commerce transaction. You receive the e-coupon, and then you go and you redeem that electronic coupon, meeting those requirements. The menu itself is provided as part of that e-coupon. And just to be clear, the redemption process does not have to itself be electronic? Your Honor, it's disclosed in PERTIA that it actually is. It's still an electronic coupon, but it doesn't have to be. Right, but to the extent we're focused just on the restaurant menu, it is maybe these days a commonplace idea of ordering your food electronically, but maybe not so much back in PERTIA's days where one, I would think, would contemplate ordering your food from the menu actually at the restaurant. Yes, I think Your Honor. I think this is probably what the Board had in mind. There's no second electronic step, transaction step, after getting the menu that is implicit in or maybe even naturally understood at the time to be contemplated by that delivery of the menu. So the only electronic transaction is getting the menu along with the coupon. Well, and Your Honor, I think that's where the limitation is actually met. It is through getting the e-coupon, the electronic coupon, and redeeming that. What came along with the coupon, and this is all that's required in Claims 37 and 43, is the menu. There's no requirement that you do something electronically with the menu afterwards. That's just not provided in the claims. I don't believe opposing counsel addressed its cross-appeal, but we stand on the arguments that I raised earlier, that they are gladly stopped from raising any of those positions because of the 932 IPR. Unless there's any further questions, Your Honor? No, thank you, Counsel. Thank you. Since there is essentially no argument on the cross-appeal, there's nothing for you to respond to. Thank you, Your Honor.  Thank you, Your Honor.